May it please the court, the District Court erroneously dismissed two detailed, plausible, detailed complaints by adopting report and recommendations that distorted the facts, misapplied the law, and ignored allegations that were favorable to the plaintiff, Jose Alba. The most egregious example is that the arresting officers and the District Attorney's Office had a video of the incident as alleged in the complaint, which was seized when Jose Alba was arrested. Under Article 5 of the Penal Law, there are two defenses, and under this court's prior decision in Jocks v. Cabernet, and also under the New York Penal Law, these justification defenses negate criminality. If they're aware of the facts that negate probable cause, they can't ignore that, right? That's correct. In the Jocks, they cannot deliberately disregard facts which establish justification. So, having the video, they saw the video before filing the charges. So, if there's no reasonable interpretation of the video other than that the staffing was justified, then it would negate probable cause for the charges, right? That's correct. Yes, and not only that, according to the police paperwork, the arrest was actually 8.30 in the morning the next day by the detective. But, counsel, having tried murder cases where there was a defense, the defense of justification, having instructed jurors, and it's my understanding reviewing New York law, but it's the same where I tried cases in Connecticut, a justification defense is just that. It's a defense. It does not negate probable cause because the jurors are instructed, they're not to consider this justification defense until they have found that the government, in this case, or the prosecuting authority has proven beyond a reasonable doubt all of the elements of the crime of murder or first-degree manslaughter, whatever the crime is for which justification applies. So, even a jury would first have to find that your client committed murder or first-degree assault or whatever the mens rea they found before they could consider a justification defense. The defense of justification is so complex that I don't understand how you get around the fact that probable cause exists for the crime. It is just that justification is ultimately a defense that makes it a nullity. So, I don't think that you can rely on a lack of probable cause with the video. It may be that the video justifies not prosecuting someone because the government feels that they ultimately cannot disprove self-defense or establish an exception to the justification defense, but how do you get around the probable cause? You still have to find the person guilty beyond a reasonable doubt before you can consider justification. Your Honor, that may be the case in Connecticut, but as D.A. Breg explained in his motion to dismiss and also the Jocks case, in New York, a justification defense negates probable cause. It's not an affirmative defense. Wait, wait, wait. No, don't attribute that to Mr. Breg. We did not say that there was no probable cause. These statements said we conclude that we would be unable to disprove the defense beyond a reasonable doubt, right? Well, that was a—it's our position. It's your position. It doesn't matter what—you know, that's not what Mr. Breg acknowledged, what you just said. I'm talking about a different issue. I want to ask a different issue. Can I follow up on this? Okay. I'm sorry, I'll make sure that you do. You know, it's just this idea—so it doesn't matter what Breg said, but we did—our court held in Jocks that if the officer has knowledge of a justification, a fact showing a justification that would negate the existence of the crime, that also negates probable cause, right? Maybe logically you could have said something different, but that's the law of our country. But in that case, the officer was involved in the crime. That's a key distinction. Typically, to determine whether justification is appropriate requires a more in-depth investigation. I can't look at a video and determine, for example, whether someone had a reasonable— you know, the test for justification is does the person using lethal force reasonably believe that lethal force is about to be used on that person? That's one. Two, would a reasonable person in that person's shoes have held that belief? And that's to prove self-defense. Second, was the level of force used necessary to repel that attack? That's—there's a subjective and, again, an objective test. Would a reasonable person under those circumstances believe that? Even if the element of self-defense cannot be disproven, because it's always the government's burden by the government, then there's also the affirmative exceptions. Someone provokes a fight. Who was the provocateur? Whether there was a duty to retreat. That's not an issue here, because it's a business or a home. There's no duty to retreat. But there are exceptions to self-defense. So I don't think you can rely on that case, because in that case it was the very officer who engaged in the assault. So it's a very different case. Here, it is hard for me to imagine. Otherwise, somebody would—I could shoot somebody on the street and then tell the officers, there's a video. Go look. See the store here? There's a video. Look at the video. Clearly I felt threatened, and it was self-defense. That's not what this case is about, and it takes law enforcement a long time to assess that, counsel. Your Honor, I have two parts, two answers to that question. First of all, I want to focus on the strongest allegation, which the district court ignored, and the report and recommendation said it's a beefed-up claim, but didn't analyze it, and neither did the defendants, because there is no answer. Under New York law, if somebody goes behind the counter, which is a burglary, and they had that video, and then committed a crime of unlawful imprisonment, menacing assault against Mr. Alba, there's no balancing. Automatic right to use deadly force. What is the authority for the proposition that behind the counter is a separate premises that is unlawfully entered? Could you just tell me what cases I need to read to that proposition? Those cases, as well as the statute, are cited in— The language of the statute talks about unlawful entry of a premises, right? And there's no question that the premises considered as the store was open to the public. So there's no burglary because he enters the store of the felonious intent, and he did have that. Once you go behind the counter in an unauthorized area— Just type me the case so that I know where to find that. Your Honor, I could supplement very quickly by providing a letter with cases and issues. It's in the brief. You're telling me that your entire—well, not your entire case, but the strongest point in your case rests on this proposition, and I want to know where I could find it in your brief. What is the case authority for that proposition? Your Honor, when District Attorney Bragg wrote the motion to dismiss, they were in possession of the same facts. He knew at the very beginning— No, no, no, you're missing my point. You are telling me that the strongest defense here is not self-defense, exactly. It is the justification of resisting a burglary, and you tell me that it is well-established in New York law that unlawful entry of a premises includes entering a store lawfully but then going behind the counter, which is treated as a separate premises. And that's perfectly—it could be the law. I don't know. But I'm trying to find out why you tell me that that is so well-established. Your Honor, with the exception of the complaint, which cited D. A. Bragg's memo, it was never addressed below. Excuse me. Okay, so the answer is, as of now, you cannot tell me something, but maybe you could send me a letter and tell me what— No, I can cite the cases in D. A. Bragg's memo right now. And this was a complaint, Your Honor. There was no discovery here. The statute, it was never litigated. There was no defense. But this is a question of law. Excuse me. My problem is, with respect to the self-defense, for reasons similar to what Judge Kahn was talking about, I guess I would have to agree that if there is a videotape that establishes that something is not true, that otherwise there might be probable cause to believe, that if the police are in possession of that video, that would negate probable cause. But here, when we are talking about a defense of some complexity, you know, I look at this video and I say, hey, this guy has got a pretty good claim here of self-defense, but that's what the defense is obviously going to be. But at the level of, is there probable cause to make an arrest and file a charge and then do further investigation to see whether there are other witnesses, Mr. Alba himself never said the words, I was afraid, and that's why I said that. Well, he did say during his interrogation he wanted to come out and fight with me. Someone like Austin Simon, so much larger, aggressive, throwing him against the wall. Right, but there needs to be subjective fear. And I'm not saying that this defeats the defense down the road. It seems to me, frankly, that this case played out exactly as I would expect it to be. The police arrive, they see a guy in a pool of blood. The guy next to him has a knife. You arrest everybody and then let God sort it out. Okay, then you get a little further into it. It's still the same knife. You look at the video. You say, oh, this guy's got a plain self-defense. What do we think about that? Well, it could go one way. It could go the other way. I find it hard to believe that any district attorney, in my experience, would ever have said, yeah, just go home. You know, there's nothing here. Well, Your Honor, the burglary issue was objective, and I will give you cases on that. But let me just point out, the detective reports stated, and this is cited in the opening brief, justified. They told NBC News, aside from the justification, self-defense, they came to this conclusion while Jose Alva was in the precinct. Something that discovered will bear out, change that calculate that everything was reversed. Can you tell me exactly where someone, one of the police officers, said, this man is innocent and we are charging him anyway? The detective reports that are cited in the brief, that are contained in the joint appendix, state justification. They also state that Mr. Simon went behind the counter to attack Jose Alva. That's the burglary. They told NBC News, the news reported, while Jose Alva was still in the precinct, a police source, self-defense. They came to this conclusion. Who's they? The police, Your Honor. The police? All the detectives, the detectives that were involved. All the detectives went to NBC News? Can you be more specific? The NBC News article is an unnamed person, but the detective reports were written by the three detectives. We were denied discovery to find out what people knew. So what NBC News report are you referring to? It's cited in the brief. It was in July 1st, NBC article, he was arrested, and they said self-defense. And that's cited in my brief. Well, that's a little general. They said it was self-defense. It's possible that the report could say the police were told it was self-defense, or he reported it was self-defense. Well, Your Honor, that's why we need discovery to find out. We can look at the brief to see what the relevance of the ABC News report is. But I just want to separate out the claims, right? So you have a claim for false arrest and a claim for malicious prosecution. By the time they file charges, which is relevant to the malicious prosecution, they've seen the video, right? So, like, your argument doesn't depend on saying, he said there was a video, and therefore they have to go watch it before taking any action, right? At least for the purpose of malicious prosecution, they had already seen the video, right? Yes, and also... So for that claim, your argument is not that they should go out and do a further investigation. Your argument is anybody who, a reasonable officer who watched the video would have understood that the scabbing was justified, right? Yes, well, yes, and it's not... This is one of these things where I just want to work out. So, for the purposes of that, does the law turn on whether he was committing a burglary? So the reason it's justified is because he's in an enclosed space. There's a much younger and stronger man assaulting him, pushing him down, and then grabbing him by the collar. The relevance of the burglary would be that you have a duty to retreat if you think you could avoid the use of deadly force against you. But whether he had a duty or not, I guess you would still say he was in a tiny enclosed space with the person assaulting him, so he couldn't have retreated, right? Yes, that's correct. So, like, not a lot really turns on whether it was technically a burglary or not, but your argument there, I guess, is that the small space behind the counter was not open to the public, and so that would be a trespass. And if he's trespassing in order to commit a crime, like an assault, then it would be a burglary. Yes, it would just be going into the back room also of a steward to steal while the clerk's in front. So, in terms of whether there is a lack of probable cause to bring the charges after they've seen the video, he's done his job. But the reason you could state a claim is because a reasonable jury could have concluded that the officer should have known that the defendant was acting in self-defense, right? Yes. It just looks like not based on the fact that the officer was personally involved in the crime or whatever, it's about whether the facts known to the officer bringing the charges showed that the person was acting in self-defense. Yes. And so the question is whether a reasonable jury could conclude that the officer viewing what happened on the video should have known that Alba was acting in self-defense. That's the question. If we think a reasonable jury could conclude that, that means you're stating a claim, right?  And in addition to that— No, the other idea about how there's a subjective fear element. So that's right. In order to act in self-defense, you not only have to be objectively reasonable that you perceived a threat of deadly force, which means the threat of force sufficient to cause death or serious bodily injury, but also that he subjectively believed it, right? Well, in terms of that, right, so if we think that the objective elements are met because he's being pushed down, he's being grabbed and not allowed to leave by somebody much stronger who seems belligerent, it would be very odd to conclude that, well, objectively he would be in fear of the use of deadly force against him. But maybe, you know, he's the rare person who just, like, isn't really worried about the use of force. Like, it's sort of odd to say that maybe he subjectively believed that there wasn't going to be the use of deadly force against him, right? Yes. But even if we thought that we needed evidence of his subjective fear, it's true. He didn't say the words to the officers. I was subjectively in fear of the use of serious bodily injury being inflicted on me, but he said he was trying to pull me outside to the officers, and we hear on the tape Simon saying, come outside and fight me, right, while he's dragging him outside, right?  So, your argument is that at least a reasonable jury could conclude that an officer knowing those facts would understand that Alba was afraid that he was dragging him out to beat him severely, right? Yes, and that would just be the one justification defense, the defense of his person, if he fears serious injury. There are two separate defenses, right? The self-defense, the issue, it seems to me, is whether there was a reasonable fear of lethal force, right, of death or serious bodily injury, when someone was not displaying a weapon, but was simply someone who could administer a beating, could out-box, out-fight, could do some damage to the victim, right? Well, he could kill him with his bare hands, also, your Honor. He could, but we do not typically say that someone, even someone, you know, maybe if it's Mike Tyson versus Woody Allen, he might have some sort of feeling about that, but just one big man and one smaller man, and the threat is, I'm going to punch you out, we do not normally say, so you can shoot him because you're afraid you will die. That would be a disputable issue, it seems to me, a triable case. You could win that case as a defendant before a jury, but you could also lose. A separate defense is the defense of burglary. New York says, apart from whatever the threat is to your life or injury to you, you can defend against certain crimes, and that is absolute. That is, we don't have to say he was afraid he would be killed. We only have to say he was a victim of a burglary, and therefore, of course the more common example of this might be somebody breaks into your house at night, you don't know who he is, and you wake up and you take the gun from your bed table and shoot him. But this may constitute a burglary based on the proposition that behind the counter is a separate premises that is entered with the intent to commit a crime. And if the person comes behind the counter, this would be the theory, with the intent to shoplift something that is not outside but is only held behind the counter, you can kill him. That's the proposition of the New York law, right? Yes. As you interpret it. Yes. Right, okay. Your Honor, in addition to that, he didn't say, Austin, Simon, come out and fight with me. The anger that was displayed, besides, if you watch the video, although it's a compilation. That's a great jury argument. He's reaching into his pocket drawer. That's a great jury argument. The question is, it seems to me, would a reasonable jury be able to find that any reasonable officer looking at the video would automatically know that that's the right answer? Your Honor. The jury thinks that could be the answer or should be the answer or whatever. A reasonable jury could think that. A reasonable jury has to conclude, for your claim of malicious prosecution, that the officers, once they've seen the video, have no possible conclusion other than that this would be a justifiable homicide. And without any further investigation, the man should be sent free. Well, no, Your Honor, there may be additional facts out there that are known to the officers which led them to writing the paperwork justified. There may be additional facts. I don't even have the entire video. That would come in at trial. But if you get past the motion to dismiss, your verdicts show that a reasonable jury could conclude that an officer who looked at the video would know that the response was justified. Like, it's possible that the government will bring in other facts that show that you can't prove the allegations of the complaint. But, like, that's what we're evaluating now. And we have the video. The video shows that Alba was in closed space with Simon, who was assaulting him, pushing him down. He bumps into the register, falls into the chair, and then he's grabbing him by the collar to take him outside to fight him, right? Yes. And so do you think it would be reasonable for a jury to conclude, well, you know, maybe it was just going to be a severe beating, but it wasn't going to be that big a deal, so he was obligated to just take the beating? A jury couldn't find that. Under the burglary, he had the automatic right to use force. I don't actually want to focus on the burglary. I just want to focus on the defense of himself. So it was pretty clear that the guy was angry. I mean, he comes in, he starts yelling at him. Alba himself says, calm down, and tries to reason with him by showing him the receipt. The guy is not relenting. He's pulling him outside to fight him, as he says. So we know it's got to be objectively reasonable. There's going to be a beating, and there does not seem to be an end point at which it's going to stop. So what would be the way to think that maybe he did not fear the use of force sufficient to cause serious violence against him? What would a jury have to think, that he should have just undergone the beating and not defended himself? He should have fought himself with his own fists, but he is a 61-year-old man who is 5'7", and he's being assaulted by a 35-year-old man who's 6 feet tall, right? that all Jose Alba had to fear under the penal law was death or serious physical injury. You're confusing the elements of self-defense. The elements of self-defense are in two parts. First, the reasonable, objective, and subjective belief of the need to use physical force at all. And then secondarily, the need, the objective and subjective belief to use deadly physical force, which is what your client used here. I'm struggling with having instructed many times jurors on the defense of self-defense after they found someone the government had proven beyond a reasonable doubt, not probable cause, all the elements of the crime to which self-defense applies. The jury is then instructed on how they consider the elements of self-defense, the four, the physical force, objective and subjective, deadly physical force, objective and subjective, and then the disqualifications or exceptions, duty to retreat, initial aggressor. Here my question is, having instructed jurors numerous times, knowing what they are instructed to consider, I struggle with how police, looking, even in the initial days of an investigation, at a single video would say, well, that is clear self-defense for deadly physical force. I was just pointing out that serious physical injury is enough. But the Jock's case says that the 1983 plaintiff, his case doesn't disappear because he's got a trial in his court. But correct me if I'm wrong, the officer in that case was the officer involved in the attack. And the one who brought the charges. It's very different. He understood what was in his mind and what was in the plaintiff's mind. The holding says you cannot deliberately disregard facts which establish justification, which negates probable cause and criminality. And I just want to point out. The video itself is a complete, detailed depiction of exactly what happened, right? There are additional facts that come out later that show that he had a justification defense. The justification defense is based on what you see in the video, right? Yes, but the video that was submitted to the district court was a compilation video by the city. Brad had the same video where they drafted the false criminal complaint. The accusatory instrument is not based on anyone's observation. I thought you were relying on the encounter when the girlfriend of your client first showed, not your client, the assault, the defendant in the criminal case. I mean, the person who conducted the assault. As I understood it, his girlfriend goes in with a little girl to try to buy something. There's an interaction. It goes badly. She says, I'm coming back with my boyfriend, father of the child, whatever it is. So the interaction that occurred between your client before he stabbed him to death, and there was a lot more interaction, and there were things going on beyond the video that police could and should consider in making all this complex determination of whether justification. What I'm pointing out, Your Honor, is that D.A. Bragg, he did this motion to dismiss, and he's making all these public statements while my client's at Rikers Island. People are jumping to conclusions. I'm still investigating. I haven't made a determination yet while my client is sitting at Rikers Island. For five days, six days? Yes. Counseling? He was not an advocate of a case already assembled. In most cases, your approach would suggest that anybody, someone who killed someone on the street or in a business or in a home, and they say, self-defense, the police ought to just look at the videos that are available and say, well, clearly you felt threatened and you felt the need to use deadly physical force. Your Honor, wrongful intent could be inferred by two things here, and this was a motion to dismiss. We had no discovery. We have a criminal complaint, an accusatory instrument, where the officer describes the video. The same video. Just like a more direct answer to Judge Collins' question. So your argument is not that somebody says self-defense and it triggers an obligation of the officers to go and investigate whether there was self-defense, right? Your argument, for purposes of the malicious prosecution claim, is they had in fact seen the video. They don't have to do an additional investigation. They had seen the video, and the video on its face shows an act of self-defense, and any reasonable officer would understand that, right? That's your argument. There's no argument that somehow there's a violation if the officers don't do an additional investigation that the defendant suggests. No, these are objective facts. The whole case turns on whether if we look at the video, the only reasonable conclusion that any officer could possibly draw is that no crime was committed here. Yes, and your Honor, also, it wasn't a complete video. The complete video with all the threats and everything was described in Brad's motion. No, no, no. The videos. Whatever videos the officers had at the time they filed the charge, that if we look at those videos, the only reasonable conclusion that any officer could draw is that this was a justified offense, and there was not even probable cause to arrest somebody and investigate further and see if we can prove this beyond a reasonable doubt. Yes, that's correct, but what I am saying is they had a more vivid... Those officers are therefore answerable in damages. Yes, and they had a more vivid video as described in the motion. Do we have that video? I don't have it. It's described in the motion to dismiss. Brad in the police department has it. If you look at the... Is there something different than what the videos that he had up show? If you look at the criminal complaint, which we contend was misleading at best and likely deliberately deceptive, and you compare that description of the video with Brad's description of the video in the motion to dismiss, completely different. And Brad's saying in the motion to dismiss, we did a thorough investigation, we did a criminal investigation, we did this, we did this, we went to the scene. All that is described in the video. You think the video that we have in the record shows a justified act of self-defense. You're just saying that there also seems to be other evidence that reinforces it. Yes, and I'm also saying that... But let's stop right there. Let's focus just on the video. How does a video of a guy who's admittedly fighting and being threatened, who's being pulled out, he's your client, the one with the knife. Nothing in the video shows the other guy had a... Well, he had a box cutter. D.A. Bragg said that. You can't see those in the video, can you? But it says visible. D.A. Bragg said in the video he has a box cutter visible in the front pocket. And if you watch the video, he leashes into his pocket. Your client pulls the knife and brings the knife to a fistfight. In the typical case, that is hard to say that's a clear-cut justification because of the increase to deadly physical force. Your Honor, often Simon wasn't going to take him outside and have a fistfight. And my client didn't bring a knife. He was working in a store. He was all alone. There was a long line. Often Simon's girlfriend said, I'm going to get him and he's going to fuck you up. And you write me anger. And that's a great closing argument for a jury on self... on justification. Your Honor, Jock says you look at this in the very beginning. Under New York law, these are... this justification defense negates probable cause. And he's reaching into his pocket. My client... it was a knife. I get this idea that he's reaching into his pocket and that might be an additional point. I don't know. But it's not totally obvious from the video that he was about to pull a knife. But your argument is more straightforward, right? That the guy was beating him up and showed no signs of relenting. And that put Alba in an objectively and subjectively reasonable fear of the use of deadly force. Or the inclusion of serious bodily injury against him. Even without the pocket or a weapon. He was... and New York law does not require him to undergo a beating and serious bodily injury without defending himself. That's correct. Even aside from the knife and reaching into his pocket, besides the age, the anger, throwing him, standing over him, come out and fight with me. Right. Okay. Can I ask also about your deliberate indifference claim? So the deliberate indifference claim is that Alba was checked into Rikers and a physician says the wound needs to be cleaned. You need to come back to the infirmary to clean the wound twice a day and to receive medication, which I assume is antibiotics. But I guess the complaint says medication. And then what happens? He's incarcerated for five days? Yes, five days. And over the course of those five days, they don't take him for the twice daily cleaning and they never take him for the medication. They take him for just one follow-up appointment. They take him for one. We have the Department of Correctional Medical Records that do state the doctor said that. And Jose Alba testified at a hearing pre-suit pursuant to general municipal law 58, but he asked the officers every day to take him and they didn't take him. It's just one. But he knew that he had the doctor's instructions that he needed to go back twice a day for cleaning and to receive medication and they didn't do it. I suppose it's possible that it will turn out that the wound was not so serious that it really required all of that, but, you know, that would be a back question. Yes, it could lead to that. The officers can't be sure. The nature of the injury, if it's a stab wound or an avulsion of the skin, what is that exactly? It means that there was an area on his arm where the skin was removed and exposed the muscle? Is that the nature of the injury? Your Honor, the Harlem hospital records that the city submitted with their motion to dismiss, I was reviewing them again this morning. Aside from the two things you just said, it's a stab wound and puncture wound. The Harlem hospital records do not make the, do not give medicine. It was the writer's doctors that said clean every day, clean the wound. But the Harlem hospital records say puncture wound and stab wound. And the defendants for that claim would be, are unknown to you at this point, but you can, you have Sue John Doe corrections officers and discovery. So wherever they are, whoever was in charge of that cell and didn't follow those doctors orders, assuming they're aware, and you've got a reasonable basis for saying that's deliberately different. Yes. You have to find out who they are. And that is not something that you need to plausibly know already to start the complaint. You just have John Doe's, so we can fill those in with discovery. Right. And we also cite case law in our brief that this was a systemic problem in the Department of Corrections. So high level people are aware, but they were held in contempt. Okay. We'll worry about that later. The commissioner of corrections in charge of Rikers Island is not much of a basis to say that he knows what's happening to Jose Alva. Well, no, but he knows about the practices which happening and no corrective action was taken. Okay, fine. But we need to show personal involvement by the defendants. We don't just say a supervisor is liable. So, I mean, I think it's sufficient what Judge Lynch said that you can allege it against the John Doe officers who did not take it, right? That's correct. That's correct. Okay. Well, thanks very much, Mr. Cardinali. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the first appellee, Mr. Kirkman. May it please the court, Jeff Kirkman on behalf of the City Appellees. I'd like to start briefly with the false arrest claim. I don't hear my colleague attempting to argue that the videos were before the officers, that the officers had seen the videos before they took Alva into custody. The officers had reasonably trustworthy information when they walked into the store that Alva intentionally killed Simon. They encountered Simon in a pool of blood, Alva standing in front of Simon. I don't know. So, just, you know, I think we should spend the most time on malicious prosecution because for the reasons we discussed, they'd seen the video by then. But in terms of just viewing the scene, if an officer comes into a crime scene and there is somebody at the threshold of the back area where the shopkeeper stands who's been attacked and the cash register is open, wouldn't a reasonable officer think it was a burglary of some sort and the shop owner had defended himself? Even if that were a reasonable inference, the standard here is whether a reasonable officer would have needed to conclude that a justification defense. So what's the way the reasonable officer would have understood the scene that would have given them probable cause that Alva had committed a crime? I mean, I think certainly based on the facts alleged and what they would have seen at the scene, there would have been a reasonable inference that there was some kind of altercation and that there was no need for the officers, for a reasonable officer to conclude that Alva subjectively believed he needed to kill Simon in order to remove him from the store. So you're saying the officer's belief would be even if there was a burglary going on, it was a disproportionate response to stab him? That's precisely right. What about the scene that showed that though? I mean, there were no allegations in the complaint from Alva that he gave information to the officers that would have led a reasonable officer to believe that he... Even if he had, like we said, you don't need to credit what somebody says anyway, right? That wouldn't really make a difference. It has to be about the facts that they see at the scene. Well, it doesn't have to turn on what he said, but at the very least, you would think that in a circumstance like this, if Alva felt he had a reasonable defense, he would have submitted that to the officers and provided that information to them. But I do want to ask about the malicious prosecution, because by then the officers have seen the video, right? So they know that Simon came back into the enclosed area behind the thing, was screaming at him, pushed him down. He says, calm down, calm down, whatever, and Simon is not relenting, grabs him by the collar, says, come fight me, and is going to take him outside to beat him. So you're saying a reasonable jury could conclude that a reasonable officer could conclude that it wasn't an act of self-defense. But how could it be? What was the reasonable thing that Alva was supposed to do under those circumstances if he had a means of self-defense at his disposal? He was supposed to just not utilize it and take a beating? What I'm arguing is that a reasonable jury could conclude that a reasonable officer would not necessarily have to find that Alva had the subjective belief that it was necessary to kill someone. So you're saying that, okay, the objective circumstances show that a reasonable person would be fearing the infliction of a serious bodily injury, but maybe Alva is the kind of guy who's kind of oblivious to that or is especially brave and so maybe he didn't subjectively fear it because I don't have independent evidence of his skin and mind. I might think that there was a crime on that basis. That's pretty weird, isn't it? I mean, number one, there are two elements to this justification, and a reasonable officer would necessarily need to conclude that that subjective element is satisfied. And I'd also emphasize that in the case of somebody who's watching the video, if the objective circumstances are such that a normal person under those circumstances would fear serious bodily injury, on what basis would the officer say, well, maybe he didn't subjectively fear it? Like, what's the basis for that? Why is that a reasonable belief? Well, staying with the subjective prong for a second, the videos are not the only component. In Alva's interrogation, he conceded that, number one, he did not know that Simon was carrying a box cutter, and during his interrogation... In the box cutter, right? So, like, I mean, you agree just on the objective prong that a much larger, younger guy who comes into an enclosed space and is screaming at him and pushes him down and then grabs him and takes him and says, I'm going to fight you. Like, the objective circumstances are, I'm going to suffer a severe beating, right? I would not concede that on the objective prong any reasonable officer would have needed to conclude that it was reasonable for Alva to use a deadly force to... Why is there a thought process that a reasonable officer could go through to conclude that it was not an act of self-defense? Well, I mean, I'm not arguing that it was not an act of self-defense, but what I'm arguing... So you're saying a reasonable officer could conclude that it was not an act of self-defense? No, no, no. The question is whether a reasonable officer would have to know that there is not even probable cause to think that a crime had been committed. Right? Because, you know, when we start to look into this, one version of the objective fact is he's there in the enclosure now. At that point, Alva has no way of getting away. This guy is just going to keep dwelling on him until somebody stops him and there's nobody there who's going to stop him. That's one sort of situation. Then you inject the fact that, well, it turns out that actually the bad guy is saying, come outside and fight me. And he's going to pick him up by the collar and drag him out onto the street where there could be police officers, there could be ex-Marines, there could be any reasonable bystander, and then he's going to administer a deadly beating. Now, I don't know whether that's... If I were a juror, I'd say, yeah, all right, but still, the little guy is getting beaten in self-defense. But whether a police officer has to think that there is no reason why this person should be arrested or charged with anything on the night of this offense while we go and try to figure out what's going on here. This is expecting an awful lot of police officers, and we have cases every day in this court, it seems like, where there's some allegation of excessive force or wrongful arrest or wrongful charging by police officers, and we're routinely bending over backwards. The cop has a hard job. You come to the scene of a domestic dispute, everybody's got... The woman has bruises, but there's a different sort of story. Everybody says that the other person started it. They arrest everybody, and then we figure it out later. This is not really what your argument is here, that they don't know everything. Their job is not to decide, at the end of the day, who's going to be convicted and who's going to be acquitted. This is a question of, does a reasonable police officer have to say, either for false arrest at the moment when he shows up on the scene, or after even looking at a video that seems to strengthen the self-defense justification, that no reasonable officer could think that this is a situation where a charge should be brought and the system should work its way through. That's exactly correct. If there is a scenario where, given the... What's correct? Is your position that the officers can just arrest everybody involved in an altercation and then let somebody else figure out who actually committed a crime? I think we're focusing on the prosecution here, and we're focusing on whether there's a scenario a reasonable officer could envision where, under the circumstances Alba faced, he would not have understood himself... I agree with that. Whether you want to phrase it the way I said it or you want to phrase it the way Judge Hall said it, I just want to know what is the thought process a reasonable officer could go through to conclude, after seeing the video and all the information that they had seen at the time of the filing of the charges, that Alba had committed a crime? The thought process they could go through is that Alba would have understood Simon to be bringing him out onto the street to, as he said in his interrogation, apologize to the girlfriend that there was going to be a brawl, that it might even be an intense brawl, but that it wouldn't necessarily have required Alba to use deadly force in order to conclude that brawl. When you say intense brawl, you're saying Alba should understand that he is obligated to take the beating. It's not that he's obligated to take a beating. It's the level of force that you're allowed to use that would justify your actions. So in New York, correct me if I'm wrong, People v. Castillo, 42 New York 3rd, 628 and 631, 2024 case, the defense does not automatically apply throughout the entirety of an encounter. A defendant who may be justified in using deadly physical force at the start of an encounter loses the right to use, can lose the right to use such force. So the point isn't that you should be allowed, that you have to take a beating, but you can fight back. And if the level of force that you reasonably believed subjectively has now come to deadly physical force, and that an objective person, under the totality of the circumstances, understood that the level of force you were about to face is deadly physical force, then you may be justified in upping the ante by using deadly physical force. So it's not that you have to be a punching bag. It's that the level of force that you use has to be commensurate with the level of force you're facing. And only when the government would have to disprove in a trial that you didn't subjectively believe deadly force was about to be used against you, and that a reasonable person, under those circumstances, would not have believed deadly force was about to be used. It's a fluid defense, isn't it? That's absolutely correct, and that means that there are different factual permutations, different extrapolations that could be reached from that scenario. That's the position at the time that he stabbed Simon. You're saying he might have been allowed to punch back, he just couldn't use the knife. Is that right? The circumstances would have needed to show to any reasonable officer that... No, I understand, but now we're talking about the reasonable officer who has concluded that there's probable possibility that it was not a justified use of force. So I want to walk through that reasonable officer's thought process. And you're saying the thought process is the reasonable officer would have concluded, well, yeah, the guy is assaulting him in an enclosed space and is pulling him to initiate an intense brawl, as you said. But that would only justify fighting back manually and not using a weapon? That's what you're saying the officer would have been thinking? An officer could have reasonably concluded, based on these circumstances, that Simon was attempting to bring Alba out into the street, where there could be people who would intervene, where there could be circumstances where... I'm sorry, if the assailant has him in his control, like he's holding him by the collar and moving him about, you're saying because the assailant has said he's going to administer the beating outside, the victim is supposed to say, well, because I'm going to be outside, maybe there's an officer passing by who might help me, and so therefore I don't need now to defend myself and use the force because I... So a man. That's the issue. So that's your position? That is our position, and I would also emphasize that... But you don't disagree that he was in fear of the use of physical force, sufficient to cause bodily injury? You're just saying it wasn't obvious that he needed to respond with lethal force? That's what you're saying? That is one point, and subjectively, a reasonable officer was not required to believe that he subjectively did fear deadly force against him, because during his interview, he had a full opportunity to explain his state of mind during this encounter. He had a full opportunity to explain why he acted the way he did. He never took the opportunity to explain how he was in fear. A reasonable officer would conclude that even though the objective circumstances said that he was in apprehension of the use of deadly force, maybe he subjectively didn't fear it? Again, we wouldn't concede that a reasonable officer... If I had said in the interrogation, I subjectively believed that I was about to be beaten up very seriously, you wouldn't be required to credit it, right? We wouldn't be required to credit it, but I think that's a factor that would... Does it mean that maybe he wasn't? We wouldn't be required to credit it, but I think that would be a factor that would tip him a bit further in the direction of being able to establish... But he does say, he does say, he was pulling me outside, and the video shows Simon saying, I'm going to fight you outside, right? So you don't deny what he did say, basically. If you put those two things together, he's going to take me outside and beat me up, right? One version of the fact is that Simon said, come out and fight me. Simon also said, as Alba confirmed in his interview, that he wanted him to come out and apologize to the girlfriend. So there were different permutations of what a reasonable person could have understood Simon was attempting to achieve by bringing Alba out of the counter state, and that is enough for a reasonable officer not to need to conclude that either Alba... I'm interested about the apologizing. You're saying if it seems possible that the guy is threatening serious bodily injury unless he apologizes, instead of defending himself against the assault, he'd be obligated to do the apology. Is that right? I don't think it's about anyone's obligation. What's the relevance of the apology thing, then, if it's not that... That was a way out of having to use deadly force, and therefore that's the out he should have taken. It's just one reasonable interpretation of a way an officer... The reason it would be reasonable is to say, if it's possible that you could get the guy to stop beating you by saying the thing he wants you to say, then you're not allowed to use deadly force in self-defense. That would be the reason to think that there's probable cause to believe he committed a crime. I'm asking if you think that that's right. I think there's a reasonable interpretation facing Alba that an officer... Isn't it right if a guy says to me, even at gunpoint, you apologize to my girlfriend or I'm going to pull the trigger, that instead of saying I'm sorry, you're entitled to pull out a bigger gun and kill him? Would that be self-defense under New York law? That there's no obligation to take reasonable steps to avoid killing a man? I apologize if I misspoke, Judge Lynch. I would agree with your statement that there is an obligation to de-escalate, and I was not... None of that means that Mr. Alba is in fact guilty of murder, or that at a trial a reasonable prosecutor would think he had a reasonable chance of winning this case, because eventually that's what the prosecutor decided, that they had no reasonable chance of winning the case. The question is, what can the officers oblige in looking at this video to reach the conclusion that there is no reasonable basis for charging this person with a crime? That's the point. That's exactly the point. Is it really your best argument here, the fact that we're having this discussion, that we see what's displayed on the video, what's heard on the video, differently, in different interpretations of what might have been happening, not knowing what's inside someone's mind, right? Their intent, what's in their mind subjectively. Isn't the fact that we're having this discussion... Mr. Alba is very lucky the state made the call that it was too hard a case to disprove justification, and therefore it would not prosecute him fully. But the fact that we're having this discussion supports precisely your argument that the officers on the ground investigating, responding to a scene where there's a dead guy bleeding, and a guy holding a knife with blood in his hands, that they're not, one, going to arrest him, and two, charge him until they determine otherwise. I think that's exactly right, Judge Kahn, that there were numerous officers involved in this arrest and charging decision. I don't know if the discussion is probative of anything. The reason I'm asking a lot of questions is I'm kind of bewildered at what the legal theory would be by which an officer could conclude that he was not acting in self-defense. So to me, the discussion kind of suggests it's hard to understand the thought process of that reasonable officer. And if I could just sort of follow up on what you were saying in response to Judge Lynch. Is that the city's position, that if somebody has a gun to your head and is demanding that you state something or turn over something or do something, then you have the capacity to defend yourself with force? You're obligated to always comply with the instructions of the person with the gun to your head rather than use the force. Is that right? I'm agreeing with the general principle that there is some obligation to de-escalate. We're dealing with a situation where Alba admittedly did not know that Simon had any weapon on him. So this is a situation where there was no display of a weapon. I think you agreed a moment ago that a much larger, younger person who's beating him and said he's going to keep beating him, the objective circumstances would suggest that he's at least going to have a broken bone, right? Number one, I think there's a question of whether deadly force would be justified in response to that type of altercation. Deadly force is something that would cause death or serious bodily injury. Like if you break somebody's bones, that's a serious bodily injury, right? It is, but I think the more important point is there is a different interpretation of the fact that a reasonable officer could reach. Right, I can't really understand what the interpretation of the fact is. I understand we've been going around this, so maybe I'll just try it one time. If you can sort of say straightforwardly the thought process by which the reasonable officer would conclude that it was not an act of self-defense and therefore not justified. The thought process an officer could go through to conclude that it was not justified is that Alba was trying to bring Simon out from behind the counter to apologize to his girlfriend and that there may not have been a brawl at all had that ensued. That is an objectively reasonable interpretation of the fact that an officer could reach to conclude that Alba didn't, that it wasn't objectively reasonable in concluding that he needed to use deadly force to prevent this. Okay, I understand that. Can I ask the fact that this is a different claim? So according to the allegations of the complaint, Alba goes to the infirmary and the doctor says the wound needs to be cleaned twice a day, you need to get medication. And he tells the officers every day while he's incarcerated that he needs to go to the doctors to get that treatment and they do not bring him. So why is that a plausible allegation of deliberate indifference to serious medical needs? Sure, so focusing on the objective problem, number one, Alba in his complaint, he alleges that he was brought for treatment hours after he arrived. He was in detention for five days. He received follow-up treatment. This is, this case says Alba. I get the idea that actually it might be that the doctor was being overly cautious and he didn't really need to go, he didn't really need to go twice a day and he really did need the medication right away. But, you know, we're in a motion to dismiss and we made plausible inferences in favor of the complaint and so aren't the allegations at least plausible that the doctor said you have a serious injury and you need this treatment and he told the officers that he needed it and the officers just didn't do it and it wouldn't be hard for them to do it because the infirmary was in the same facility where he was being held. Yeah, so I'd make a couple points. Number one, he needs to allege facts that make it, that aren't just consistent with a theory of negligence. His allegations here are consistent with a theory that perhaps the doctors did not feel it was necessary to follow-up or the follow-up in the relatively limited time that he was in the prison were accidental in some way, not right. It's possible, like I just said, it's possible that the doctor, you get the doctors on the stand to say, well, yeah, I gave that advice, but actually it wasn't absolutely necessary so it's not really a big deal that he didn't get the treatment I said he should get during his incarceration. But again, if we're making plausible inferences in favor of the complaint, you know, you thought he said that, right? He said the doctor said this was needed to treat my wound, my stab wound, and I told the officers and they didn't give it to me. So like maybe you'll be able to introduce evidence to show that it wasn't so serious as to require the treatment the doctors prescribed, but why isn't it plausible, you know, a motion to dismiss it? And I think just one other point to add, I mean, the standard in this court is that a serious medical need is one that presents a serious risk of death, degeneration, or extreme pain. There are no allegations that Alba experienced even extreme pain as a result of these actions, and I grant that the standard is a serious risk, but in Charles, the court explained that it is highly relevant in the context of a deliberate indifference claim. So what would allow us to decide on a motion to dismiss that it wasn't that kind of an injury? I mean, he had been stabbed, right? And I've seen the video and it doesn't look like a chunk of skin is missing. It does seem like that's pretty likely to get infected, and so it might be pretty serious that he needed it to be cleaned and to get antibiotics right away. So at the motion to dismiss, shouldn't we at least entertain that inference unless, you know, when we get more evidence, you could show that it wasn't so serious as to require that treatment? I don't think so because this is not a case where he did not receive treatment. He received treatment immediately after he arrived, and then he received follow-up treatment partway through his five-day stay. But you agree that under the allegations, he did not receive the treatment that the doctor said he needed. Those are the allegations, and I would again emphasize that those allegations are consistent with negligence, which is not the standard on a deliberate indifference claim. And again, there are no allegations, really, even if he was at risk. But what's the idea that it's negligence? So he says to the officers, I need to go to the doctor because they've said I needed this treatment, and they just don't take him. It's not like—I mean, negligence would be they forget about it, they don't keep an accurate record of who needs to go to the infirmary or something, but like his allegations are, he said I need this, and they said, no, we're not getting it. It's just like, I don't—how's that negligence? That's an intentional response to his request, right? But my understanding is that he was not taken for follow-up care. I'm not recalling an allegation that someone told him, no, we will not take him for follow-up care. But the allegation is, I said to the officer, I need this, and they did not give it to me, right? It's not like it is consistent with an idea that like nobody really knew and wasn't keeping track of it, and if they had kept better records, they would have brought him to the infirmary. That's like negligence, right? But like that's not his allegations. I think it's fully consistent with his allegations that he told someone that he was asking to go for follow-up care and that for oversight reasons rather than intentional or reckless reasons, he was not brought for follow-up. Okay, but that's not the necessary inference, right? That's not the necessary inference, but the standard is he needs to allege facts that make it more than merely consistent with non-liable conduct. I mean, if the wound were much more obvious, he was like missing an arm and just had like an open gash, and he said to the officers, I need this person that's treated, and they just don't take him. Yeah, I thought you were going to say that it wasn't obvious to any correction officer that this was a serious problem, that he was told he needed to get this follow-up, but maybe it could take two more days before they sent him or something like that. I mean, the idea that it's negligence strikes me as, again, they have reason to believe that a doctor said he needs this follow-up care, but of course if he needed this follow-up care because that's the appropriate way to deal with a hangmail, you wouldn't have a cause of action. Now, again, the facts of this case are he was stabbed, and that makes it a little harder to make that claim, but I thought that your best shot was to say it's not clear that the average correction officer faced with a lot of people saying take me to the doctor and even saying the doctor said I need to go back to the doctor who looks at the guy and doesn't look like he's dying has not been necessarily deliberately indifferent to a serious injury. But is that an argument you're making or not making? It is another argument that we're making. But you're also saying it's not deliberate indifference. We've made arguments under both the subjects. I get that it's possible that the officer looked at the wound and said that's not serious enough to take you twice a day, so I'm not doing that. But that's not what the complaint says. We don't know if that's true. And for all we know, it was totally obvious that this was a very serious, affected wound. But it might be that you could show that it wasn't. I don't know. But isn't that something that should be decided on evidence? I would start again with the nature of the injury and his allegations in connection with the injury. I mean, he has not alleged that he told a doctor that he was in extreme pain and that that was the reason he was making these requests. So that's the difference? He says the doctor says I need this treatment and I need to go to the doctor. But if he had said a doctor says I need to go to the doctor plus I'm in extreme pain in the interim, that would be enough. I mean, wouldn't that just be a conclusory allegation anyway? Like that's just a statement of the legal standard. Well, I mean, I think it would go to the subjective state of the doctor in deciding whether this is a serious enough condition that it requires immediate action. Right. So if it hinges on that, isn't this a case where we make the inference in favor of the complaint that the doctor would say the thing that would support the allegation. But you might show that the doctor actually says something else. So it can't prove the allegation. But that is like the quintessential statement that's decided after a motion for dismiss, right? I think I would still emphasize that he still had a pleading burden to allege facts that would push him over the line into a complaint that isn't only consistent with a doctor either deciding that this need hadn't risen to the level of seriousness that this court had set or deprioritizing it based on those facts given the numerous other requests that doctors were receiving. Could I go back to the burglary argument? You would agree that one thing that is clear under New York law is that deadly force is justified to prevent a burglary. It says that in the statute, right? Yes. And that means that if I wake up in the middle of the night and there's a stranger who seems to have come in the window, and it's a reasonable inference that he didn't come in there for anything other than to do some kind of crime, I don't have to be in fear of my life to resort to deadly force to stop him from taking the TV check. You don't have to be in fear of your life, but you need to have an objectively reasonable subjective belief that it's necessary to use deadly force against the perpetrator in order to stop the burglary that's ongoing. Now, if the only premises in question here was the store, it's clear that there's no burglary going on even if someone enters the store during business hours with the intent to commit a felony. But the proposition that's being asserted, and that seems to have gotten credence from the district attorney, is that when you go behind the counter where the general public is not invited with the intent to commit a crime, you are engaged in a burglary. Is that New York law? I'm not able to provide a case explaining whether that crosses the line, whether that particular area... This might be an open question of some sort. But because the problem is, if that is the law, then it would seem to be the case that if someone says, I want to... Maybe the drunk is stupid or something, he says to the clerk, I want to get those razor blades which are behind the counter, and I'm going to come in and get them because I don't have any money. He comes in and grabs the thing and starts to walk out. And again, you have Aldo the Small and Meek and Shoplifter the Great and Powerful. You could shoot him. Is that New York law? No. New York law requires... But you don't have a case that requires what? Tell me what it requires. Well, New York law would require an objectively, again, an objectively reasonable belief that it's necessary to use deadly force against the perpetrator in those circumstances. And again, I would circle back to our argument in this case. He's already got the razor blades. He's already completed the felony in one sense, but he hasn't gotten away with the goods. So the crime is still in progress. I think the proposition that's being asserted here is that it is New York law, that you could use deadly force if otherwise you're going to get away with the razor blades. I find it difficult to believe that that would be a reasonable law, but that sounds like the proposition that's being advanced. And maybe there's no case law on it one way or the other. But you're saying it would turn on, again, the necessity of using force to... Now, in this case, it's not stealing razor blades. In this case, it's an assault. But the assault is ongoing at the time that the deadly force is used. That's true, but again, I think you have to come back to what a reasonable officer could have understood to be ongoing. Even if this burglary is ongoing, would a reasonable officer be able to conclude that once Alba, you know, exited the store, that everything would dissipate? There wouldn't be a need to use deadly force? In the hypothetical about the person who goes in the store and says, I don't have money, I want the razors behind you, strong, pushes his way in, takes the razors, is what you're saying that under New York law, as the person's walking out the store, you can't shoot him in the back, because now you can't say that you were facing deadly physical force that would justify the use of deadly physical force, because you're not repelling deadly physical force at that point. Is that what you're trying to say? Right, I don't think it would be... Otherwise there'd be a lot of shooting of people in the back of the, you know, as they're walking out of stores from larceny or theft. Exactly, exactly. Well, only if they're committing a burglary, and this is a very technical thing, and I don't know whether the average police officer is thinking in those terms when he's thinking about burglaries, about people going behind the counter when they're not allowed to do so. But, you know, we have to look at what New York law actually is, and it does not involve, it seems to me, a need to be in fear of real life. I mean, this is sort of, it's really the, you know, the law of the street, when it comes to Bernie Getz, probably turns on the juror's perception of whether Mr. Getz thought someone was going to stab him with a screwdriver, but in fact, the law was, if he was defending himself against forcible robbery, he didn't have to fear death at all in order to defend against that kind of crime. That seems a little more reasonable as a law to have than this somewhat strange interpretation of the burglary statute. I'm just wondering what New York law actually is, and whether there's ever been a case in which someone was charged with burglary under circumstances of this sort. You know, if no one gets killed and Mr. Getz, he punches out Ms. Galvin and walks away, is there a logical crime to charge him with this burglary? But anyway, I don't know the answer to those things. I've never been a New York prosecutor, and that's why. Okay. Okay, thank you very much, Mr. Kirkman. Let's hear from the second appellee, Mr. Gagne, is that right? It's Gagne, Your Honor. Gagne. Sorry about that, but thanks very much. Thank you. May it please the Court, David Gagne on behalf of District Attorney Alvin Bragg, appellee. The District Court correctly held that allowing plaintiffs to file a second amended complaint would be futile because D.A. Bragg was absolutely immune from all of plaintiff's claims. The challenged conduct that gave rise to the alleged violations were quintessential prosecutorial functions that were covered by absolute immunity. Plaintiffs' malicious prosecution and related claims all stem from conducts that occurred on July 2, 2022. The drafting of the criminal complaint, the decision to charge plaintiffs with murder, and the people's bail request at the arraignment. As even plaintiff does not dispute, these are legal decisions that are core to the prosecutor's role as an advocate and are therefore entitled to absolute immunity. Plaintiff attempts to avoid the absolute immunity bar by arguing that the people's post-arraignment investigation that occurred in the weeks after July 2 were not a prosecutorial function. But that investigation did not possibly cause any of the alleged harms to plaintiffs. I get that we've talked about prosecutorial immunity as absolute and sweeping pretty broadly. Isn't it sort of odd that if the police officer signs the charges, he gets only qualified immunity, but if the prosecutor signs the charges, it's the same act, but he gets absolute immunity? I think that's probably what we've said in our cases, but does that make sense? Don't we usually judge it by the act as opposed to the office that somebody occupies? It is what this court has said, and it's not just the act of drafting the criminal complaint. There's also the filing of the criminal complaint, which of course only the prosecutor is responsible for. In Imbler, this court stated that it would be more onerous for a prosecutor to be entitled to only qualified immunity than other executive officials. So the distinction is that for the prosecutor, when he does the same act, it's connected to a bunch of other things that make it more complicated, I guess, is what you're saying. So the prosecutor, as a function of their role as an advocate, are necessarily making many decisions that will implicate a defendant's constitutional rights. And so what Imbler said is that it would be too onerous on the prosecutors to defend those decisions in every case that a defendant could colorably raise claims of constitutional injury. So do you... It looks like Imbler, you attributed that to us. That's the Supreme Court, that's not us. That's the Supreme Court, yes, Imbler, that's right. So there's some debate about what exactly the district attorney was saying when he dismissed the charges. Do you believe that there was probable cause to arrest Alba? Yes, there was. I do believe that there was probable cause to arrest and to charge him. So what was the theory by which there was probable cause? Again, what's the thought process by which you conclude that there's probable cause to believe that he committed a crime? Is that your thought process? In other words, you're representing Mr. Bragg, right? I'm representing Mr. Bragg. I'm not representing the police officers. That's Mr. Kirkland's client. He's expressed the view on behalf of his client, a certain view on behalf of his client. Do you happen to have an opinion about that? If you have one, I guess Judge Nash would like to know what it is. At the arrest stage, certainly. Again, this is irrelevant to DA Bragg's liability. So the district attorney dismissed the charges after the charging document was filed. So I guess I'm just asking in light of knowing what's on the video and whatever circumstances was known at the time of the charging document. Why was there a probable cause to believe he was not self-defense? I do want to address that question, but I just want to first state that that question is really irrelevant to the absolute immunity doctrine, as well as the fact that... I was curious about your opinion, and you said you do think that there was probable cause, so I want to ask why you think there was. Sure. So I think there's two points. One is that the videos did not so conclusively establish the justification defense by themselves as to negate probable cause to charge him with murder on July 2nd. The people, although they did move to dismiss the case, they said that they couldn't prove the case beyond a reasonable doubt at trial. They said nothing about probable cause. That's one. Two, the people in their motion to dismiss didn't just rely on the videos. They also conducted a thorough investigation, which included interviewing civilian witnesses, police officers. They interviewed the medical examiner. They visited the crime scene. So all of that went into their conclusion. So if you're saying the videos didn't establish the justification, what is the evidence that established the justification? Some witness said something that you couldn't see on the video that established it? No, but the video by itself didn't conclusively establish that. My question was, what was missing that you learned from the eyewitness interviews? Well, there could have been things that were said that were not captured on video that would have... Well, there could have been, but you know... But the people had to conduct that investigation first before they could make that determination. Okay, so then even the video, just the video without the other stuff, why does it not establish the justification defense? Well, New York courts have repeatedly held that it is not objectively reasonable for someone to use deadly force against an unarmed aggressor, and that's what we had in this case. So... Do you think there's a per se rule that if the aggressor is unarmed, you can't use deadly force in response? It's not... I'm not saying that there's a per se rule. We looked at the totality of the circumstances, but I think it's certainly constructed... So why are the circumstances met here when the guy was in his own enclosed space, is much younger and bigger than the victim, and had a hold of him, and said he was going to further beat him up? So what is it about that that shows that you don't get a response? Well, what plaintiffs said was that the victim, Austin Simon, was going to take him outside to make him apologize to his girlfriend. And again, for the use of deadly force, plaintiffs had to both subjectively believe that it was necessary to use not just any force, but deadly force to defend him. So it's this idea that it wasn't reasonable for him not to be taken outside and apologize and see if that satisfies Simon. Right. He could have resorted to some lower level of force before he decided to grab the knife and fatally stab him. There's a requirement that someone use proportionate amount of force. They can only use deadly force... Does it matter that he's so much older and smaller than the family? Sure, it definitely matters. But the plaintiffs had to believe that the use of deadly force against him was imminent. And the videos by themselves don't conclusively show that. So they didn't necessarily discover any new facts. They discovered that they were unable to find any new facts that would escalate the conclusion that, well, there's probable cause, it's reasonable to make an arrest, it's reasonable to make a charge, to the level of, we can prove this beyond a reasonable doubt. That's what the investigation was designed to show. That's right. So it all goes back to Mr. Kirkland's argument on how persuasive that is or isn't as to whether there was probable cause. But none of that has anything to do with Mr. Bragg as a defendant. No, it doesn't. Again, plaintiffs' complaints as to D.A. Bragg all stem from the course of conduct that they took in this prosecution. These are all prosecutorial functions. But it is, in fact, a malicious prosecution. There's still absolute immunity for the prosecutor, right? That's right, yes. Thank you. Okay, thank you, Mr. Donye. We'll hear back from Mr. Cardinale on rebuttals. I'll start at the last issue. The face of the complaint in the Hill v. Steve New York case doesn't establish that the prosecutor was acting in an advocacy role as opposed to investigative discovery proceeds. Now, based on Alvin Bragg's statements, I'm still investigating. Don't jump to conclusions. The question of whether the prosecutor is engaging in investigative activity is about whether the prosecutor, albeit he has the office of assistant district attorney or district attorney, is actually acting as a cop. So when the United States Attorney for the Southern District of New York goes out in an undercover capacity wearing a leather jacket, if he did something illegal in participating in an arrest or something like that out on the street, he would not be engaged in a prosecutorial function. But if he is engaging in the further inquiry, which prosecutors engage in all the time with the assistance of the police, to develop a case, find witnesses, see what you can do, decide whether you still have a case that you want to bring after you've done the whole story. You're not complaining about anything that Mr. Bragg or his assistants did during the course of those several days of investigation. They knocked down doors without a warrant. They did illegal wiretapping. If they're involved in the investigation, which the detective reports show, it doesn't matter if they're present for the arrest. You're saying after they filed the complaint, after the charge has been brought, you're saying the fact that they said, oh, we're still looking into this, means they're acting as an investigator. Even if that were true, what did they do in the capacity of an investigator that was unlawful? What you're saying was unlawful was the bringing and maintaining of the charge. Right. The reason they're liable, and also the unidentified prosecutors who were involved in this, who the district court refused to order the DA to turn over, that's why we need discovery. No, no, no. That's not the question I'm asking you. I'm asking you, what did any district attorney or assistant district attorney do in the course of the investigation that was an investigative act for which they could be held liable, as opposed to the things they did as prosecutors, which is to sign a complaint, go before a grand jury perhaps to see if they could get an indictment. I don't think they did that. All the things that would be done by any prosecutor in the course of his or her duties as a prosecutor. Yes, Your Honor. Filing, and I'm going to go to the burglary issue in a second, and I keep going to Greg's motion to dismiss because I'm trying to show, this was two weeks after, Your Honor, what they knew at the time of filing, two weeks earlier. Excuse me. When the prosecutor files the charge, are you telling me that that is an investigative function, not a prosecutorial function? What I'm saying, Your Honor. Are you saying... Your Honor, I can't answer like that because the case law says if they're involved, if they're still investigating at that point, not a case already assembled, but immediate. The way we understand that rule is that they have to be acting as an investigator when they do the thing that causes the plaintiff the harm. Then you acknowledge that the thing that caused them the harm was the filing of the charges and not some kind of investigative act that the DA was involved in. Yes, that's correct because what happened here... Your interpretation relies on the idea that if you're doing investigating, you're just liable for all the things you do when you otherwise would have immunity. You're liable for malicious prosecution. Assuming that that's not going to be what we say, maybe you should say something about the other issues where we've been having more of a debate. Oh, okay. Malicious prosecution... Yes, I just wanted to indicate, going back to the burglary issue, Judge Lynch, in the joint appendix 217 to 218 where DA Bred talks, they cited not only the statute, that going on a premises, even an area behind a counter, okay, which is not accessible to the public is a burglary. And there's nothing in the statute that says you have to use proportionate force or anything like that. If they're committing a burglary and you're trying to stop the burglary, you could use deadly force. I guess you're saying it would also be more obvious if they went into the storeroom or whatever. Yes. Like behind the door. Here's the reason why you might be a little hesitant about it, is because the area behind the counter is visible to the public. But it's more obvious that you're committing a burglary if you go into some other area of the building that the public doesn't go into. Once you go into the unauthorized area, it's a burglary, not a shoplifting petty larceny, like taking something off a shelf. D.A. Briggs cites a First Department 2019 case that says here, going behind a counter where the cash register was located, not open to customers, they had no license to enter. And they also cite the statute. And there's nothing about proportionate force or anything like that. That's what they should rely on. Yes. I'm trying to point out to everyone that the police knew this also. There are commercial burglaries. They weren't wondering. They knew this, and the detective reports say police officer Lenahan had seized the video when he arrested Alba. And if you look at the video, we can't have a situation out there where police officers walked into a store, like on the video, and one person's dead and the store worker is alive, and they handcuff him. And he's charged with murder because police officers don't know what happened. They have the video, and the detective reports say that D.A. Briggs did something to change this calculus. And that's why the criminal complaint is based on the video, and it mischaracterizes it. In the same video, Briggs describes completely differently two weeks later. Now, my colleague said, oh, we did a criminal investigation. We went to the scene. We did this. They only did that because of the public outrage, like the Daniel Penney case. That's why Brad backpedaled and basically said what was on the video, because of the pressure he was getting from the news media and from the public. And that's why the same video, and they say in the motion to dismiss that Simon never said, come apologize. That's not on the video. He was never given a choice. Apologize. It's not on the video. And Brad admits that. And I said in my reply brief that the statement that Brad is saying today in court, and what she said in the criminal complaint, that he wanted her to come out and apologize, is false. So in the video, he comes and he says, why did you snatch out of her hand what's wrong with you? He never said, I'm going to stop beating you if you apologize. Right, and the criminal complaint has a statement similar to what my colleague said in court. He wanted me to apologize, so I stabbed him. And if you look at the interrogation of Alba, he never says that. He said he submitted that. He never said that. They made that up to buttress the case against him. How about, would it be possible for a reasonable officer viewing the video to think, well, maybe Alba could have inferred that all he wanted was an apology, and therefore I could resolve this altercation by apologizing? There's no basis in the video. It's not said in the video. And Alba never said that during the interrogation. In this court, all he says in this precedent, officers don't have to accept what the defendant says. That's the least probative information available to an officer. They had objective facts here, and there's no proportionality. Under the statute, putting the burglary issue to the side, if Alba fears reasonably death or serious physical injury, he could use deadly force. There's no proportionality issue. And because they have the video from the very beginning, according to the detective reports, it's not just malicious prosecution. This court held in the Loath case, L-O-W-T-H, cited in my brief, that a probable cause, even if they have it initially, because they walk in and they immediately handcuff them because someone's on the floor, if it dissipates, that's the word this court used, later on, you have a false arrest claim. And according to the paperwork, the arrest wasn't effectuated until the next day. You have a claim for the period in which they continued the arrest after seeing the information that dissipates probable cause. That's correct. The detective reports indicate Lenahan had the video. Excuse me. Go ahead. You're not contending that he wasn't arrested when he was required to go to the police station? Yes, he was arrested, but he wasn't formally charged. They should have released him at that point. But something happened. The GAs were in the precinct watching the interrogations. At the time they filed the charges, they had seen the video, and the video either is or is not conclusive, that there was such a strong self-defense claim for the use of deadly force, that it's not just a question of what they could prove beyond a reasonable doubt, it's not even probable cause anymore. That's really the theory of the case. Yes, and as far as charges, Your Honor, the detectives charge him when they put in the arrest report murder in the second degree. And they go to the DA's office and bring the case. The DA charges when they file the criminal complaint. So when the officers did the paperwork, the arrest report, which the city submitted with their motion to dismiss, and they charge him with murder, that's false arrest. Once the charge is filed, the criminal complaint, that's what this court has held, that Melissa's prosecution covers post-arraignment deprivations of liberty. So up until the arraignment, it's false arrest. Okay, all right. Well, thank you very much, Mr. Cardinale. The case is submitted.